UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SOUTH POINT INC.,  )<br> Appellant,  )<br>  )<br>v.  )<br>  )<br>WARREN AGIN, as Trustee of the  )<br>Bankruptcy Estate of Debra Kurak,  )<br> Appellee.  )<br>  ) | CIVIL ACTION<br>NO. 09-cv-11441-DPW |

<u>MEMORANDUM AND ORDER</u>
May 11, 2010

This appeal arises out of an adversary proceeding filed by
the Chapter 7 Trustee of a bankruptcy estate, Warren E. Agin (the
"Trustee"), seeking a determination that South Point, Inc., the
assignee of the original mortgage lender, does not have a valid
mortgage lien against the Debtor's property.  The United States
Bankruptcy Court for the District of Massachusetts found the
mortgage was not valid against the Debtor's interest in the real
property and granted the Trustee's motion for summary judgment.
South Point now appeals.

**I. BACKGROUND**

***A.   Factual Background***[1]

On May 21, 2008, Debra A. Kurak (the "Debtor") filed a
voluntary Chapter 7 petition, on which she listed her address as

---

[1] The following facts were found by the Bankruptcy Court in
its July 15, 2009 Memorandum.  *See generally In re Kurak*, 409
B.R. 259 (Bankr. D. Mass. 2009).

37-39 Falmouth Street, Attleboro, Massachusetts (the "Property").
While she listed an ownership interest in the Property on
"Schedule A - Real Property," she noted that it was "subject to a
lien in the amount of $361,250.00 [for] which the Debtor has no
contractual liability."

On May 30, 2008, before the first meeting of creditors,
South Point, as serviced by Wilshire Credit Corporation, sought
to enforce its rights under a note and mortgage encumbering the
Property by filing a Motion for Relief from the Automatic Stay.
In that motion, South Point claimed that, on September 22, 2006,
Manuel Lopes executed a $361,250 note in favor of First Franklin,
a Division of National City Bank ("First Franklin"), and that the
Debtor and Lopes simultaneously executed and delivered a mortgage
to Mortgage Electronic Registration Systems, Inc., as nominee of
First Franklin.  South Point maintained that First Franklin
recorded the mortgage in the Bristol County Registry of Deeds,
and that South Point, as the assignee of the note and mortgage,
was owed $389,719.72.

The closing for the Property was conducted on September 22,
2006 by J. Daniel Lindley, Esq., the attorney representing First
Franklin, at the residence co-owned by Lopes and the Debtor.
Lopes executed the note to First Franklin, and both Lopes and the
Debtor signed the last page of the mortgage, which Lindley
notarized.  Lindley testified that he took the mortgage to his

2

office and made, or caused to be made, three copies for distribution: one for Lopes, one for Lindley's file, and one for First Franklin.

Four versions of the mortgage were produced to the Bankruptcy Court by the Trustee, in support of his summary judgment motion, as Exhibits C through F.  On the first page of each version, Manuel Lopes is identified as the "Borrower," which is defined as "the mortgagor under this Security Instrument." Exhibit D, a copy of the mortgage produced by Lopes' counsel and given to the Trustee, included only the first page identifying Lopes as the sole Borrower and had no signature page.

The other versions, however, include the twelfth page of the mortgage which contains both Lopes' and the Debtor's signatures above the word "Borrower" and beneath the following language: "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it."  That is precisely how the last page of Exhibit E appears.[2]  However, on the signature page of Exhibit C,[3] the word

---

[2] Both Exhibits D and E are copies of the mortgage sent by Lindley to Lopes.  Exhibit D only contains the first page, while Exhibit E – which came from Lindley's records - has the first and last pages as well as a copy of the transmittal letter, dated September 26, 2006, from Lindley's office to Lopes.

[3] Unlike the other versions, Exhibit C is stamped with the notation "Certified True Copy."  The Bankruptcy Court noted that, "[d]espite the characterization as a 'Certified True Copy,' this

"Borrower" below the Debtor's signature is crossed out with five typed x's and replaced with the word "witness."  The recorded mortgage, Exhibit F, unlike the other versions, has the phrase "& Debra Kurak" added to the "Borrower" term on the first page, thereby identifying both Lopes and the Debtor as Borrowers, and contains both of their signatures as Borrowers on the last page.

Based on its review of the several versions of the mortgage, the Bankruptcy Court concluded that "[t]here is no question that the Debtor signed a mortgage and that Lindley notarized her signature.  Additionally, she and Lopes initialed each page of the mortgage, and Lindley's notarization appears" on the last page.  That notarization is both handwritten and typed as follows:[4]

> On this *22nd* day of *September, 2006*, before me personally appeared MANUEL LOPES *and Debra Kurak* to me known to be the ~~person (or~~ persons) described in and who executed the foregoing instrument, and acknowledged that ~~he/she/~~they executed the same as ~~his/her/~~their free act and deed.
>
> */s/ J. Daniel Lindley* Notary Public
> My commission expires: *06/14/13*

As noted by the Bankruptcy Court, in his deposition, Lindley explained why multiple versions of the mortgage exist:

> Apparently -- I spoke to Lindsay [MacPhee, Lindley's assistant], who has no memory of this closing at all, but

_____

version of the mortgage was not the version that was ultimately recorded."  *In re Kurak*, 409 B.R. at 261 n.1.

[4] The handwritten insertions in the notarization are italicized above.  The strikeouts were handwritten.

4

apparently when we faxed the executed mortgage to the
lender, the lender called back and asked that Debra Kurak's
name be included on the front page of the mortgage.  And I
believe -- And Lindsay thinks she may have done that.  And
that's where that "and Debra Kurak" came from on the front
page.

     . . . .

     . . . I noticed on page 12 someone had X'd out the word
"borrower" and typed in the word "witness."  That doesn't
appear on my documents or the Registry of Deeds' documents,
so I can only figure that someone at the lender's office did
that.
    Now this exhibit [Exhibit E] doesn't show the ampersand
Debra Kurak on the first page that the others do, so I'm --
it's my opinion that this is a copy of the mortgage as my
paralegal faxed it to the lender.  And, based on that, the
lender instructed her to add the ampersand Debra Kurak.
    Later, someone seeing that Debra Kurak's name was not
on there struck out the word "borrower" and put in the word
"witness," but she was -- I know from having done closings
that even though only one owner may be the borrower, all
owners have to sign the mortgage.  Otherwise, nobody can
foreclose on it.
    And that's why I had Debra sign and initial all of the
documents having to do with the mortgage.  She was signing
in the capacity as a -- as a mortgagor, not as a borrower,
because she wasn't on the loan but as a mortgagor.

Relying upon the fact that "Debtor initialed every page of

the mortgage and signed it as Borrower," the Bankruptcy Court

"accept[ed] Lindley's testimony that he or someone in his law

office subsequently added the Debtor's name [as a Borrower] to

the first page of the mortgage (' & Debra Kurak') after he or his

employees had sent copies to both Lopes and First Franklin."  The

Bankruptcy Court concluded that it had "insufficient information

to determine when or why the word 'Borrower' was crossed out and

replaced [on the last page] with the word 'Witness' on the copy

[of the mortgage] with the notation 'Certified True Copy.'"

**B.    *Procedural History and the Bankruptcy Court Decision***

In December 2008, the Trustee filed this adversary
proceeding to determine the validity and extent of South Point's
lien against the Debtor's interest in the Property.  The Trustee
subsequently filed a motion for summary judgment seeking a
determination that South Point does not have a mortgage against
the Debtor's interest in the Property because First Franklin's
attorney purportedly altered the mortgage by adding the Debtor's
name as a Borrower after the mortgage was executed.

In its July 15, 2009 decision, the Bankruptcy Court granted
the Trustee's motion and determined that the mortgage did not
extend to the Debtor's interest in the Property.  *In re Kurak*,
409 B.R. 259, 268 (Bankr. D. Mass. 2009).  After finding that
"there is no evidence or even allegation that the Debtor
authorized her name to be added to the first page of the
mortgage, identifying her as a Borrower," the Bankruptcy Court
concluded that "Lindley, or someone in his office, added [the
Debtor's] name to the mortgage without her authority and did not
obtain and notarize her signature on the mortgage after it was
amended."  *Id.* at 266.[5]  As a result, the Bankruptcy Court
concluded that "the alteration of the mortgage by Lindley or one
of his employees, was material and voids the mortgage as to [the

---

[5] Lindley was not the Debtor's agent, rather he represented
First Franklin at the closing, and therefore he could not act on
the Debtor's behalf.  *In re Kurak*, 409 B.R. at 268.

Debtor's] interest in the property." *Id.* at 266-67.  The
Bankruptcy Court found further support for this conclusion in the
public policy consideration that "titles to real estate should
not be held hostage to disputes over the parties' intention," as
well as the general contract principle that unauthorized material
alterations to a written instrument void that instrument.  *Id.* at
267.

South Point has appealed raising as issues whether the
Bankruptcy Court erred by (1) granting summary judgment based
upon its factual finding that Lindley or one of his employees
altered the mortgage, and (2) concluding that the alternation
invalidated the mortgage with respect to the estate's interest in
the property.

## II. STANDARD OF REVIEW

Rule 8013 of the Federal Rules of Bankruptcy Procedure
provides that "[o]n an appeal the district court . . . may
affirm, modify, or reverse a bankruptcy judge's judgment, order,
or decree or remand with instructions for further proceedings."
The bankruptcy court's findings of fact are reviewed for clear
error and its conclusions of law are reviewed de novo.  *Richmond
v. N.H. Supreme Court Committee on Prof'l Conduct*, 542 F.3d 913,
917 (1st Cir. 2008).  "The bankruptcy court findings will be
considered clearly erroneous if, after a review of the entire
record, [the court is] left with the definite and firm conviction

that a mistake has been committed." *In re R & R Assocs. of Hampton*, 402 F.3d 257, 264 (1st Cir. 2005) (internal quotation marks and citation omitted).

### III. DISCUSSION

#### A. *Whether The Bankruptcy Court Committed Factual Error*

South Point argues that the Bankruptcy Court committed clear error by finding that Lindley or one of his employees added the Debtor's name to the first page of the mortgage after its execution.  First, South Point claims that the Bankruptcy Court rested "its finding that the Mortgage was altered after execution *solely* based on" Lindley's testimony, which was "a regurgitation of a conversation" between Lindley and his assistant Lindsay MacPhee.  (Emphasis added).  South Point objects to Lindley's statements that MacPhee told him that (1) she "has no memory of this closing at all," and (2) she thought she might have changed the executed mortgage to include the Debtor's name on the first page.  Second, South Point contends that the Bankruptcy Court was obligated to resolve this factual issue in favor of South Point, the non-moving party to a summary judgment motion.  *See Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990) (evaluating a summary judgment motion by viewing "the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor").

There is no dispute that Lindley's testimony regarding what MacPhee said is hearsay.  *See* FED. R. EVID. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").  However, contrary to South Point's contention, the Bankruptcy Court did not rely on Lindley's testimony regarding MacPhee's statements, but rather "*accept[ed] Lindley's testimony* that he or someone in his law office subsequently added the Debtor's name to the first page of the mortgage . . . after he or his employees had sent copies to both Lopes and First Franklin."  *In re Kurak*, 409 B.R. at 263 (emphasis added).

Even if Lindley's testimony is disregarded entirely, the only reasonable inference is that the mortgage was altered after the Debtor signed, but before Lindley, the lender's agent, arranged for recording.  It is clear, as the Bankruptcy Court indicated, that the Debtor initialed each page of the mortgage and signed it on the last page above the word "Borrower." However, in Exhibits D and E, the versions of the mortgage mailed to Lopes on September 26, 2006 (four days after the mortgage was signed), only Lopes' name appears as a defined Borrower on the first page.  The only version in which the Debtor is identified as a defined Borrower is the recorded version of the mortgage, Exhibit F, which Lindley's office recorded with the Registry of

Deeds on October 3, 2006.  Therefore, between September 22 (when
the mortgage was signed) and October 3 (when the mortgage was
recorded), someone altered the signed mortgage by adding the
Debtor's name to the first page as an identified Borrower.  Even
when I view the facts in the light most favorable to South Point,
the only reasonable conclusion is that someone in Lindley's
office changed the mortgage after the Debtor signed it and before
Lindley recorded it.  That conclusion is also consistent with
Lindley's testimony, even when shorn of the hearsay reference to
MacPhee's statements.[6]  The Bankruptcy Court's fact finding on
this point was not clearly erroneous.

I also find that the Bankruptcy Court did not commit clear
error but rather was scrupulously comprehensive when it concluded
there was "insufficient information to determine when or why the
word 'Borrower' was crossed out and replaced with the word
'Witness' on the copy with the notation 'Certified True Copy'" as

_____

[6] South Point contends in a footnote that, "on the Trustee's
summary judgment motion, the opposite must be assumed, that the
"& Debra Kurak" was deleted from the front page of the altered
and non-confirming [sic] versions of the mortgage."  South Point
misunderstands the applicable standard that, "[a]t the summary
judgment stage, facts must be viewed in the light most favorable
to the nonmoving party only if there is a 'genuine' dispute as to
those facts."  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).
Here, there is evidence of record from which it can reasonably be
inferred that the original version stated "& Debra Kurak" on the
first page and that someone deleted that language after the
Debtor signed the mortgage; any such inference is belied by
Lindley's testimony that he made three copies of the signed
mortgage and by the fact that the other copies do not name the
Debtor on the first page.

shown on Exhibit C.   There is no evidence that at the time the
Debtor signed the mortgage, she signed above the word "witness."
In fact, even South Point recognizes that the mortgage was
altered *after* the Debtor signed, admitting that "[t]he only
possible explanation is the obvious one: Ms. Kurak signed the
mortgage when the signature line listed her as 'Borrower' and
someone *later* altered copies of that document."   (Emphasis
added.)   On all other versions of the mortgage – which Lindley
testified were copies of the signed original – the Debtor signed
above the word "Borrower."   Regardless of who altered the
mortgage to identify the Debtor specifically as a witness and not
a Borrower, the fact remains that copies of the mortgage were
altered both as to designated Borrower(s) and as to witness after
it was signed, notarized, and executed.

**B.**    ***Whether The Bankruptcy Court Committed Legal Error***

South Point also argues that the Bankruptcy Court committed
legal error by holding that the mortgage is void as to the
Debtor's interest in the Property on the basis of fact finding I
have found in Section III.A., *supra*, was not clearly erroneous.
I review the Bankruptcy Court's conclusions of law de novo.   *See*
*Richmond*, 542 F.3d at 917.

It is black letter law that "[t]he commencement of a
bankruptcy case creates a debtor's estate, which is comprised of
'all legal or equitable interests of the debtor in property as of

11

the commencement of the case.'" *In re NTA, LLC*, 380 F.3d 523, 527-28 (1st Cir. 2004) (quoting 11 U.S.C. § 541(a)(1)).   In this connection, "[t]he extent of a debtor's interest in property is generally governed by state law." *In re Guido*, 344 B.R. 193, 196-97 (Bankr. D. Mass. 2006).   Under Massachusetts law, "[e]very deed presented for record shall contain or have endorsed upon it the full name, residence and post office address of the grantee . . . ." MASS. GEN. LAWS ch. 183 § 6.   In Massachusetts, a "title theory" state, "a mortgagee holds legal title to the mortgaged property, subject to the mortgagor's equity of redemption." *Hanna v. Town of Framingham*, 802 N.E.2d 1061, 1066 n.9 (Mass. App. Ct. 2004).

Relying on this undisputed legal foundation, the Bankruptcy Court addressed whether the insertion of the Debtor's name in the definition of Borrower after the execution of the mortgage constituted a "material alteration." *In re Kurak*, 409 B.R. at 265.   For that alteration to be "material," "the change must be such as to change the legal effect of the instrument." *Mindell v. Goldman*, 35 N.E.2d 669, 670 (Mass. 1941).   "Under the common law, the unauthorized material alteration of a written instrument by a party thereto, or the holder of it, voids the instrument and the person responsible for the alteration may not recover upon it as altered, nor may anyone claiming through the altering party . . . ." 4 AM. JUR. 2D *Alteration of Instruments* § 24.   The

rationale for voiding the instrument is that "any material alteration destroys the identity of the contract, and therefore, if a party to the contract who has not consented to its alteration were to be held bound by it, it would in effect impose a new contract to whose terms the party has never agreed." *Id.*

With respect to instruments transferring title to property, "[i]f a deed is materially altered after the attestation but before it is recorded, it may not be recorded until it is reattested." *Id.* at § 27; *see also* 4 TIFFANY REAL PROP. § 989 ("An alteration made after the delivery of the conveyance is absolutely nugatory to divest property rights vested in the grantee by the conveyance.").

While the Bankruptcy Court was "unable to find any modern cases that directly address whether the insertion of the Debtor's name after the execution of the mortgage constitutes a material alteration," *In re Kurak*, 409 B.R. at 265, I am satisfied that long-settled Massachusetts case law accords with the doctrinal view that post-execution alterations have a voiding effect in this setting. *See Lima v. Lima*, 570 N.E.2d 158, 162-63 (Mass. App. Ct. 1991) ("[T]he unauthorized alterations of the deeds prior to recording, being material in that they purported to change the deeds' legal effect, invalidated the deeds, but they did not invalidate the conveyances that had been effected by those deeds.") (internal citations omitted); *Smigliani v.*

13

*Smigliani*, 260 N.E.2d 917, 921 (Mass. 1970) (concluding that "no valid transfer of the property occurred" when the names of the grantees were erased and substituted with a different name *before* the instrument was recorded and there was "no evidence that the substitution of the grantee was made in the presence or with the authority of the grantors.").

Here, to be sure, the Debtor signed the mortgage above the word "Borrower" and beneath the language that "Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it."  However, at the time the Debtor signed the mortgage and Lindley notarized her signature, she was not a defined Borrower in the granting language on the first page of the mortgage, and therefore the mortgage cannot be interpreted to bind her as such.  *See Ethridge v. Tierone Bank*, 226 S.W.3d 127, 131-32 (Mo. 2007) (en banc) (holding that a deed of trust defining the "Borrower" as the husband but not the wife "cannot reasonably be construed to mean that [the wife] also is a borrower under the deed of trust" even though she initialed each page of the document and signed on the final page).  The mortgage grant definitively described Lopes as the sole Borrower of the Property.  Adding the Debtor's name to the definition of Borrower after she executed the mortgage materially altered the mortgage by purporting to secure an interest in the Property that she did

14

not grant when her signature was notarized.  I therefore conclude that the Bankruptcy Court correctly found that the mortgage was void as to the Debtor's interest in the Property.

### IV. CONCLUSION

For the reasons set forth more fully above, I AFFIRM the Bankruptcy Court's Order granting the Trustee's Motion for Summary Judgment.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE